# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BIOTRONIK INC., and BIOTRONIK SE & CO. KG,

Plaintiffs,

v.

NIAZI PATENT HOLDINGS LLC,

Defendant.

Case No. 25-CV-1739-JPS

**PROTECTIVE ORDER**

## 1. INTRODUCTION

On July 7th, 2026, Biotronik Inc. and Biotronik SE & Co. KG (collectively "Biotronik") moved for the entry of a protective order, with a proposed order. ECF Nos. 32, 33-1. Niazi Patent Holdings LLC ("NPH") opposed the motion, disputing the precise language to be used in the protective order. ECF No. 36. The motion is now fully briefed and ripe for review. ECF Nos. 32–37. For the reasons discussed below, the Court will grant the motion in part and deny the motion in part.

## 2. ANALYSIS

Federal Rule of Civil Procedure Rule 26(c) allows for an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including "requiring that a trade secret or other confidential research, development, or commercial information . . . be revealed only in a specified way." FED. R. CIV. P. 26(c)(1)(G); *see also* CIV. L.R. 26(e).

Protective orders are an exception to the general rule that pretrial discovery must occur in the public eye. *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979); *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins.*

*Co.*, 178 F.3d 943, 945–46 (7th Cir. 1999). Litigation must be "conducted in public to the maximum extent consistent with respecting trade secrets . . . and other facts that should be held in confidence." *Hicklin Eng'r, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) (collecting cases).

Nonetheless, the Court can enter a protective order if the parties have shown good cause and that the order is narrowly tailored to serve that cause. FED. R. CIV. P. 26(c); *Citizens First*, 178 F.3d at 945; *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (even when parties agree to the entry of a protective order, they still must demonstrate the existence of good cause). The Court can find that even broad, blanket orders are narrowly tailored and permissible when it finds that two factors are satisfied: (1) that the parties will act in good faith in designating the portions of the record that should be subject to the protective order; and (2) that the order explicitly allows the parties to the case and other interested members of the public to challenge the sealing of documents. *Cnty. Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 740 (7th Cir. 2006) (citing *Citizens First*, 178 F.3d at 946).

Here, the Court is satisfied that Biotronik brings its motion in good faith and has demonstrated good cause for the entry of a protective order. Specifically, good cause exists because "discovery will require Biotronik to disclose trade secrets and other highly sensitive priority information to NPH." ECF No. 32 at 1. Thus, the Court is satisfied that there exists a sufficient basis for the requested protective order.

However, the parties dispute the precise language to be used in the proposed order. Biotronik seeks to restrict attorney's eyes only information to attorneys, ECF No. 32 at 6–8, while NPH wants to enable Dr. Niazi's review of such information, ECF No. 36 at 4–8. Biotronik argues that

experts who consult with or are employed by its competitors should not be allowed to review its confidential information, ECF No. 32 at 8–10, and NPH suggests that Biotronik's proposed language unfairly captures such a large share of experts in the field as to disable NPH from hiring an expert with meaningful industry experience, ECF No. 36 at 10–13; and Biotronik argues that the protective order should include a prosecution bar for recipients of attorney's eyes only information, ECF No. 32 at 10–12, while NPH argues that a prosecution bar would prevent the individuals most familiar with the issues presented by the case and U.S. Patent No. RE50,170 ("the '170 patent") from participating in proceedings before the U.S. Patent and Trademark Office ("PTO"), ECF No. 36 at 13.

The Court reproduces in the following chart the parties' proposed language, ECF Nos. 33-1 and 36-1, with the disputed language bolded:

| | Biotronik's proposed language | NPH's proposed language |
|---|---|---|
| Company Officer disclosure: | Disclosure may be made to up to and including three (3) in-house counsel for the parties who either have responsibility for making decisions dealing directly with the litigation, or who are assisting outside counsel in the litigation, who are identified as such in writing to counsel for the other parties in advance of the disclosure of the ATTORNEYS' EYES ONLY information. A party may | Disclosure may be made to up to and including three (3) in-house counsel for the parties, **or in the case of Niazi Patent Holdings, LLC, principal officers**, who either have responsibility for making decisions dealing directly with the litigation, or who are assisting outside counsel in the litigation, who are identified as such in writing to counsel for the other parties in advance of the |

| | | |
|---|---|---|
| | replace an in-house counsel with a new in-house counsel by notifying the opposing party. The replaced in-house counsel must then return all ATTORNEYS' EYES ONLY information in his or her possession to the party's outside counsel and will no longer have the rights of an in-house counsel. | disclosure of the ATTORNEYS' EYES ONLY information. A party may replace an in-house counsel or principal officer with a new in-house counsel **or principal officer** by notifying the opposing party. The replaced in-house counsel **or principal officer** must then return all ATTORNEYS' EYES ONLY information in his or her possession to the party's outside counsel and will no longer have the rights of an in-house counsel **or principal officer as set forth in this paragraph** |
| Expert disclosure: | "such expert is not (1) a current or anticipated officer, director, or employee of a party, an affiliate of a party, or a party's competitor or (2) involved in product and/or process design or development for a party's competitor **pertaining to cardiac rhythm management devices or related medical device technology ("Relevant Technology")**" | "such expert is not (1) a current or anticipated officer, director, or employee of a party, an affiliate of a party, or a party's competitor or (2) **employed by a party's competitor and** involved in product and/or process design or development for a party's competitor **related to the subject matter of the lawsuit**" |

| | | |
|---|---|---|
| Prosecution bar: | Nothing in this Order shall prevent a person with access to "ATTORNEYS' EYES ONLY" material pertaining to design, manufacture, or operation of Relevant Technology from participating in a post-grant PTO proceeding, including inter partes review (IPR) or post-grant review (PGR), **except that such person shall not participate—directly or indirectly—in drafting of any claim or amendment to any claim(s)**. | Nothing in this Order shall prevent a person with access to "ATTORNEYS' EYES ONLY" material pertaining to design, manufacture, or operation of Relevant Technology from participating in a post-grant PTO proceeding, including inter partes review (IPR) or post-grant review (PGR). |

**2.1 Company Officer Disclosure**

The parties dispute whether Biotronik's information that is designated as attorney's eyes only should be viewable by NPH's principal officers, primarily Dr. Niazi. Biotronik argues that disclosure to Dr. Niazi would cause it to incur substantial risk of competitive harm as Dr. Niazi is in the business of obtaining and enforcing patents in the field of heart rhythm treatment. ECF No. 32 at 6–8. NPH responds that it does not compete with Biotronik by making an actual product, so the risk of competitive harm is minimal. ECF No. 36 at 4–5. NPH also argues that Dr. Niazi's role is distinct from a corporate executive seeking access to competitor's business information since he will likely serve as a fact and expert witness. ECF No. 36 at 6–8. Because neither of NPH's arguments is

well founded, the Court will adopt Biotronik's language regarding company officers.

First, while NPH may not make a competing product, it undoubtedly engages in competition with Biotronik. NPH pursues patents in the same field that Biotronik sells products in. Although this is not direct competition for consumers, the Court still recognizes it as economic competition. NPH's patents only have value insofar as a market exists for products that practice them do so as well. Biotronik allegedly sells such products. When two similarly situated parties enter into a patent licensing agreement, any dollar that the patent holder makes is a dollar that licensee does not. Further, the fundamental right conveyed by a patent is the right to exclude. *See Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017) ("[P]atent law provides the statutory right to exclude those that infringe."). Assuming for a moment that Biotronik's products do in fact practice the '170 patent, NPH could foreclose Biotronik's participation in the market in favor of other market participants that have successfully licensed the '170 patent. Although they do not *directly* compete, the downstream effects of patent law demonstrate that NPH and Biotronik are indeed in competition with one another.[1]

---

[1]The Court must once again caution Biotronik to take greater care in the representations in its briefing. Biotronik's briefing on this issue cites to a magistrate judge's report and recommendation but characterizes it as the court's opinion. *See* ECF No. 37 at 3 (citing *Northbrook Digit.*, 625 F. Supp. 2d at 761). The court in *Northbrook Digital* rejected view that Biotronik relies on and found that a patent licensor did not compete with a producer of goods in output markets. *Northbrook Digit.*, 625 F. Supp. 2d at 738–39 ("The [c]ourt agrees with Northbrook that the notion of 'competition' underlying the R & R is too broad. The R & R is clearly erroneous because it is based on the assumption that [Northbrook] should not have access to Vendio's financial and customer data because Northbrook, as a

Second, "[w]hen a plaintiff in a patent case is involved in prosecuting patents that are related to the defendant's business, federal courts routinely limit the plaintiff's access to the defendant's technical trade secrets." *Northbrook Digit., LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 742, 742 n.8 (D. Minn. 2008) (collecting cases). Biotronik is understandably concerned that, if NPH gains access to Biotronik's confidential information, NPH may pursue a patent directed to the confidential technology Biotronik is currently developing. However, the Court need be so cynical. Even assuming Dr. Niazi is "a man of great moral fiber" the Court "nonetheless question[s] his human ability during future years of research to separate" the technology he develops and Biotronik's confidential technology, which he seeks to review. *See Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988). Although NPH may need to retain an outside expert at their expense, this cost is a routine aspect of patent law.[2]

Nonetheless, if NPH, after searching for acceptable experts, finds that Dr. Niazi has such unique knowledge that another expert could not serve as a witness, disclosure to Dr. Niazi may be appropriate under some additional restrictive conditions. *See Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2012 WL 3582974, at *3 (N.D. Cal. Aug. 20, 2012). However,

---

result of its licensing activity, competes with Vendio in output markets. As described above, that is just not true.").

[2]Perhaps a third-party expert will serve NPH better than its in-house expert. *Accord Kay v. Ehrler*, 499 U.S. 432, 437–38 (1991) ("Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness. He is deprived of the judgment of an independent third party in framing the theory of the case, [or] evaluating alternative methods of presenting the evidence . . . .").

NPH has made no such showing, so the Court need not concern itself with this issue.

The Court will therefore include the following language in the protective order:

> Disclosure may be made to up to and including three (3) in-house counsel for the parties who either have responsibility for making decisions dealing directly with the litigation, or who are assisting outside counsel in the litigation, who are identified as such in writing to counsel for the other parties in advance of the disclosure of the ATTORNEYS' EYES ONLY information. A party may replace an in-house counsel with a new in-house counsel by notifying the opposing party. The replaced in-house counsel must then return all ATTORNEYS' EYES ONLY information in his or her possession to the party's outside counsel and will no longer have the rights of an in-house counsel.

**2.2 Expert Disclosure**

Biotronik argues that NPH's proposed language, which requires an employment relationship, too narrowly covers the range of experts who frequently consult on its competitors' products. ECF No. 32 at 8–10. NPH responds that Biotronik's proposed language too broadly captures nearly all relevant experts. ECF No. 36 at 10–13. NPH proposes an alternative phrasing of the disputed provision in its response:

> Such expert is not currently and materially involved, whether as an employee or consultant, in the engineering design or development of a specific cardiac rhythm management product that competes with a product at issue in this action, where the expert's responsibilities create a substantial risk that the Protected Material could be used in connection with such design or development.

ECF No. 36 at 12. Biotronik suggests that despite NPH conceding the employee/consultant distinction, NPH's proposed language still falls short

as it addresses only "currently" involved experts and offers no protection against disclosure for information concerning products not at issue in this action. ECF No. 37 at 7–8.

The Court must balance the interests of the parties in retaining and preparing an expert of their choice against the risk of improper use or disclosure borne by the producing party. *See GPNE Corp. v. Apple Inc.*, No. 5:12-CV-2885-LHK (PSG), 2014 WL 1027948, at *1 (N.D. Cal. Mar. 13, 2014). In deciding issues like these, courts look to whether the expert has an ongoing relationship with a competitor, *id;* involvement in competitive decision making, including participation on research, design, pricing, or contract negotiation, *Digital Equipment Corp. v. Micro Tech., Inc.*, 142 F.R.D. 488, 491 (D. Colo. 1992) (citation omitted); the potential for future involvement in competitive decision making, *id.* (citations omitted); and the expert's willingness to curtail or forego future involvement, *id.* (citation omitted).

The Court recognizes that both parties present valid, well-reasoned concerns, but declines to adopt either party's proposed language. Instead, balancing the parties' interests, the Court will include the following language in its protective order:

> Such expert is not (1) a current or reasonably foreseeable anticipated officer, director, or employee of a party, an affiliate of a party, or a party's competitor or (2) engaged in a continuing nexus to an important part of a competitor's business pertaining to cardiac rhythm management devices or related medical device technology ("Relevant Technology"), such as, but not exclusively, materially participating in the design, manufacture, pricing, or marketing of a competing product.

### 2.3 Prosecution Bar

Biotronik and NPH both agree to the inclusion of a prosecution bar in the protective order. However, they disagree as to its scope. Biotronik argues that the prosecution bar should prevent recipients of attorneys' eyes only information from drafting claims in post-grant proceedings, such as in an inter partes review ("IPR"). ECF No. 32 at 10–12. NPH disagrees and argues that Biotronik seeks an unfair advantage by preventing the people most familiar with NPH's case from handling it before the PTO. ECF No. 36 at 13.

A prosecution bar reflects concern over inadvertent disclosure where litigation counsel also represents the same client before the PTO . The Federal Circuit considered the propriety of patent prosecution bars in the seminal case of *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373 (Fed. Cir. 2010). The court held,

> [A] party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information.

*Id.* at 1381. The court stated that a prosecution bar may properly apply to attorneys "substantially engaged with prosecution" such as by "strategically amending or surrendering claim scope during prosecution." *Id.* at 1380. However, a prosecution bar may not properly apply to attorneys involved only in high level prosecution activities, such as "reporting office actions" or "filing ancillary paperwork." *Id.* at 1379–80.

Here, the disputed language prohibits amending claim language in a post-grant proceeding. The Court therefore finds that the risk of

inadvertent disclosure is substantial, and a prosecution bar is the proper remedy, as stated in *In re Deutsche Bank*. The Court is therefore satisfied that the scope of the activities prohibited by Biotronik's proposed language on direct participation reasonably reflects the risk presented by the disclosure of proprietary competitive information. However, the Court recognizes that there is a range of acceptable indirect participation and so will remove that language regarding indirect participation to minimize the costs imposed on NPH to the extent possible.

The parties do not address the remaining *Deutsche Bank* factors, so the Court will not concern itself with them. The Court will therefore include the following language in the protective order:

> Nothing in this Order shall prevent a person with access to "ATTORNEYS' EYES ONLY" material pertaining to design, manufacture, or operation of Relevant Technology from participating in a post-grant PTO proceeding, including inter partes review (IPR) or post-grant review (PGR), except that such person shall not participate directly in drafting of any claim or amendment to any claim(s).

## 3. CONCLUSION

For the reasons stated above, the Court grants Biotronik's motion for a protective order in part and denies it in part. The Court makes three additional minor modifications to the parties' protective order: (1) to clarify the difference between a "restricted" document and a "sealed" document, and that both are options for motions filed under General Local Rule 79(d), *see infra* Paragraph (E)(2); (2) to allow both parties and interested members of the public to challenge the designation of confidentiality by motion, *see infra* Paragraph (F); and (3) to establish parameters for the use of Artificial Intelligence as it pertains to confidential documents, *see infra* Paragraph (L).

Accordingly,

**IT IS ORDERED** that the Biotronik Inc., and Biotronik SE & Co. KG's motion for a protective order, ECF No. 32, be and the same is hereby **GRANTED IN PART** and **DENIED IN PART**; and

**IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 26(c) and Civil Local Rule 26(e):

**(A) DESIGNATION OF CONFIDENTIAL OR ATTORNEYS' EYES ONLY INFORMATION.** Designation of information under this Order must be made by placing or affixing on the document or material, in a manner that will not interfere with its legibility, the words "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" (individually and collectively, "Protected Material").[3]

(1) With respect to Protected Material designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" (individually and collectively, "Designated Material"), subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations. All copies, abstracts, compilations, reproductions, extracts, digests, and complete or partial summaries prepared from any Designated Material shall also be considered Designated Material and treated as such under this Order.

(2) A designation of Protected Material (i.e., "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY") may be made at any time.

(3) One who produces information, documents, or other material may designate them, in whole or in part, as "CONFIDENTIAL" when the person in good faith believes they

---

[3]The parties currently do not anticipate the necessity for source code discovery. If such needs were to arise, the Court would amend this Order to provide additional protection for the source code materials.

contain trade secrets or nonpublic confidential technical, commercial, financial, personal, or business information.

(4) One who produces information, documents, or other material may designate them, in whole or in part, as "ATTORNEYS' EYES ONLY" when the person in good faith believes that they contain particularly sensitive trade secrets or other nonpublic confidential technical, commercial, financial, personal, or business information that could provide unfair competitive advantage and therefore requires protection beyond that afforded by a CONFIDENTIAL designation.

(5) Except for information, documents, or other materials produced for inspection at the party's facilities, the designation of Protected Material as CONFIDENTIAL or ATTORNEYS' EYES ONLY must be made prior to, or contemporaneously with, their production or disclosure. In the event that information, documents or other materials are produced for inspection at the party's facilities, such information, documents, or other materials may be produced for inspection before being marked CONFIDENTIAL or ATTORNEYS' EYES ONLY. Once specific information, documents, or other materials have been designated for copying, any Protected Material will then be marked CONFIDENTIAL or ATTORNEYS' EYES ONLY after copying but before delivery to the party who inspected and designated them. There will be no waiver of confidentiality by the inspection of Protected Materials before they are copied and marked CONFIDENTIAL or ATTORNEYS' EYES ONLY pursuant to this procedure.

(6) One may, at the deposition or hearing or within 30 days of receipt of the deposition or hearing certified transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire transcript of a deposition or hearing at which CONFIDENTIAL or ATTORNEYS' EYES ONLY material was disclosed will be treated as CONFIDENTIAL. For transcript pages identified by a designating party, the court reporter must affix to the top of each such page the

legend "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" as instructed by the designating party.

(7) The applicable legend or stamp shall be placed on the exterior of the container or containers in which the information or thing is stored for non-documentary Protected Material and on each page of documentary Protected Material for which such protection is sought. For deposition and hearing transcripts, the applicable legend or stamp shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as Protected Material.

(8) Inadvertent or unintentional production of documents, information, or material that has not been designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces information, documents, or other material without designating it as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" may request destruction of that material by notifying the recipient(s) in writing as soon as reasonably possible after the producing party becomes aware of the inadvertent or unintentional disclosure, and providing replacement material that is properly designated. The recipient(s) shall then retrieve and destroy all copies (including any electronic copies) of the inadvertently or unintentionally produced materials from anyone who had received it and any documents, information, or material derived from or based thereon.

(9) Any document produced before issuance of this Order, with the designation "Confidential" or the like shall receive the same treatment as if designated "CONFIDENTIAL" under this order, any such documents produced with the designation "Confidential – Attorneys' Eyes Only" or the like shall receive the same treatment as if designated "ATTORNEYS' EYES ONLY" under this Order, unless and until such document is re-designated to have a different classification under this Order.

**(B) DISCLOSURE AND USE OF DESIGNATED MATERIAL.** Information, documents, or other material designated as CONFIDENTIAL OR ATTORNEYS' EYES ONLY under this Order must not be used or disclosed by the parties or counsel for the parties or any persons identified in subparagraphs (B)(1) and (2) below for any purposes whatsoever other than preparing for and conducting the litigation in which the information, documents, or other material were disclosed (including appeals).

(1) CONFIDENTIAL INFORMATION. The parties and counsel for the parties must not disclose or permit the disclosure of any information, documents or other material designated as "CONFIDENTIAL" by any other party or third party under this Order to any other person or entity, except that disclosures may be made in the following circumstances:

(a) Disclosure may be made to counsel and employees of counsel for the parties who have direct functional responsibility for the preparation and trial of the lawsuit. Any such employee to whom counsel for the parties makes a disclosure must be advised of, and become subject to, the provisions of this Order requiring that the information, documents, or other material be held in confidence.

(b) Disclosure may be made only to employees and in-house counsel of a party required in good faith to provide assistance in the conduct of the litigation in which the information was disclosed.

(c) Disclosure may be made to independent litigation support services, including persons or entities working for or as court reporters, graphics or design services, jury or trial consulting services (including mock jurors), photocopying, videotaping, translating preparing transcripts, exhibit, or demonstratives, document imaging, and database services and their employees and subcontractors retained by counsel and reasonably necessary to assist counsel with this litigation, who agree to abide by this Order.

(d) Disclosure may be made to consultants, investigators, or experts, as well as their employees, (collectively "experts") employed by the parties or counsel for

the parties to assist in the preparation and trial of the lawsuit, provided that:

i. Such expert is not (1) a current or reasonably foreseeable anticipated officer, director, or employee of a party, an affiliate of a party, or a party's competitor or (2) engaged in a continuing nexus to an important part of a competitor's business pertaining to cardiac rhythm management devices or related medical device technology ("Relevant Technology"), such as, but not exclusively, materially participating in the design, manufacture, pricing, or marketing of a competing product;

ii. before disclosure to any expert, the expert must be informed of and agree to be subject to the provisions of this Order requiring that the information, documents, or other material be held in confidence, and that the following materials relating to the expert must be served upon the producing party: (1) a current curriculum vitae of the expert, including a description of the individual's previous or current relationship (personal or professional) with any of the parties, their predecessors or their successors in interest, (2) a list of other cases in which the individual has provided a report or testified (at trial or deposition) within the last four years, and (3) a list of companies that the individual has been employed by or provided consulting services pertaining to Relevant Technology within the last four years and a brief description of the subject matter of the consultancy or employment; and

iii. at least ten (10) days before access to the CONFIDENTIAL material is to be given to that expert to allow the designating party to object and notify the receiving party in writing that it objects to disclosure of CONFIDENTIAL material to the expert. If the designating party does not object during that 10-day period, then the receiving party may disclose CONFIDENTIAL material to the expert pursuant to the terms of this Order. However, if the designating party objects, the parties agree to promptly confer and use good faith to resolve any such objection. If the parties are unable to resolve any objection, the objecting party may file a motion with the Court within fifteen (15) days of receipt of the notice, or within such other time as the parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

(e) Disclosure may be made to deposition and trial witnesses in connection with their testimony in the lawsuit and to the Court and the Court's staff.

(f) Disclosure may be made to persons who appear on the face of the CONFIDENTIAL materials as an author, addressee or recipient thereof.

(g) Disclosure may be made to a mediator assigned to hear this matter, and his or her staff, who agree to abide by this Order.

(h) Disclosure may be made to persons already in lawful and legitimate possession of such CONFIDENTIAL information.

(2) ATTORNEYS' EYES ONLY INFORMATION. The parties and counsel for the parties must not disclose or permit the disclosure of any information, documents, or other material designated as "ATTORNEYS' EYES ONLY" by any other party or third party under this Order to any other person or entity, except that disclosures may be made in the following circumstances:

(a) Disclosure may be made to counsel and employees of counsel for the parties who have direct functional responsibility for the preparation and trial of the lawsuit. Any such employee to whom counsel for the parties makes a disclosure must be advised of, and become subject to, the provisions of this Order requiring that the information, documents, or other material be held in confidence.

(b) Disclosure may be made to up to and including three (3) in-house counsel for the parties who either have responsibility for making decisions dealing directly with the litigation, or who are assisting outside counsel in the litigation, who are identified as such in writing to counsel for the other parties in advance of the disclosure of the ATTORNEYS' EYES ONLY information. A party may replace an in-house counsel with a new in-house counsel by notifying the opposing party. The replaced in-house counsel must then return all ATTORNEYS' EYES ONLY information in his or her possession to the party's outside counsel and will no longer have the rights of an in-house counsel.

(c) Disclosure may be made to independent litigation support services, including persons or entities working for or as court reporters, graphics or design services, jury or trial consulting services (including mock jurors), photocopying, videotaping, translating preparing transcripts, exhibit, or demonstratives, document imaging, and database services and their employees and subcontractors retained by counsel and reasonably necessary to assist counsel with this litigation, who agree to abide by this Order.

(d) Disclosure may be made to consultants, investigators, or experts, as well as their employees, (collectively "experts") employed by the parties or counsel for

the parties to assist in the preparation and trial of the lawsuit, provided that all the conditions recited in subparagraph (B)(1)(d) of this Order are met.

(e) Disclosure may be made to deposition and trial witnesses in connection with their testimony in the lawsuit and to the Court and the Court's staff.

(f) Disclosure may be made to persons who appear on the face of the ATTORNEYS' EYES ONLY information as an author, addressee or recipient thereof.

(g) Disclosure may be made to a mediator assigned to hear this matter, and his or her staff, who agree to abide by this Order.

(h) Disclosure may be made to persons already in lawful and legitimate possession of such ATTORNEYS' EYES ONLY information.

**(C) STANDARDS FOR DESIGNATION.** A party shall designate documents, information, or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information, or material is not generally known to others and that it (i) would not normally reveal it to third parties except in confidence or has undertaken with others to maintain it in confidence, or (ii) believes in good faith it is protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy. A party may also designate as "CONFIDENTIAL" documents, information, or material of a third party to whom the party reasonably believes it owes an obligation of confidentiality with respect to such documents, information, or material.

To the extent a producing party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the Producing Party may designate such Protected Material "ATTORNEYS' EYES ONLY."

**(D) THIRD-PARTY DESIGNATIONS.** To the extent that any discovery is taken (voluntarily or pursuant to a subpoena or court order) of persons who are not parties to this action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets,

confidential personal or business information, or other proprietary information, then such Third Parties may agree to be bound by this Order and may designate the document, information, or material in the same manner as a party. A Third Party's use of this Order for production of its documents, information, or material does not entitle that Third Party to have access to documents, information, or material produced by any party in this action.

To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" any documents, information, or other material, in whole or in part, produced by such Third Parties. The Third Parties shall have ten (10) days after production of such documents, information, or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information, or other material so produced or given shall be treated as CONFIDENTIAL in accordance with this Order.

**(E) MAINTENANCE OF CONFIDENTIALITY.** Except as provided in subparagraph (B), counsel for the parties must keep all Designated Material that is received under this Order secure within their exclusive possession and must place such information, documents, or other material in a secure area.

(1) All copies, duplicates, extracts, summaries, or descriptions (hereinafter referred to collectively as "copies") of Designated Material under this Order, or any portion thereof, must be immediately affixed with the words "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" if not already containing that designation.

(2) Parties may seek to have a document either "restricted" or "sealed." GEN. L.R. 79(d)(1). Restricted documents can be accessed only by the Court and counsel for both parties, whereas only the Court can access sealed documents. *Id.* To the extent that any answers to interrogatories, transcripts of depositions, responses to requests for admissions, or any other papers filed or to be filed with the Court reveal or tend to reveal information claimed to be confidential, these papers or any portion thereof must be filed

"restricted" or "sealed" by the filing party with the Clerk of Court utilizing the procedures set forth in General Local Rule 79(d). If a Court filing contains information, documents, or other materials that were designated "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" by a third party, the party making the filing shall provide notice of the filing to the third party.

(3) RESPONSE TO SUBPOENAS AND COURT ORDERS. If a receiving party is served with a subpoena or a court order that would compel disclosure of any information, documents, or material designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY, it must notify the producing party (and, if not the same person or entity, the designating party), in writing (by hand delivery, fax, or email) promptly and in no event more than ten (10) days after receiving the subpoena or order. The notice must include a copy of the subpoena or order. The receiving party also must promptly inform in writing the party who caused the subpoena or order to issue that some or all of the requested material is subject to this Order.

(4) Nothing in this Order restricts a producing party's or designating party's use or disclosure of its own Designated Material.

(5) The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the parties from introducing any Designated Material into evidence at the trial of the case, or from using any information contained in Designated Material at the trial of the case, subject to any pretrial order issued by this Court.

**(F) CHALLENGES TO CONFIDENTIALITY DESIGNATION.** A party or interested member of the public may challenge the designation of confidentiality by motion. The movant must accompany such a motion with the statement required by Civil L. R. 37. The designating party bears the burden of proving that the information, documents, or other material at issue are properly designated as confidential.

**(G) PROSECUTION BAR AND ETHICAL WALL**:

(1) **Prosecution Bar.** Any attorney representing a party, whether in-house or outside counsel, and any person associated with a party (including outside consultants and experts) who reviews, in

whole or in part, the other party's "ATTORNEYS' EYES ONLY" information pertaining to design, manufacture, or operation of Relevant Technology shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent or patent application, or in the drafting or revising of a patent claim, pertaining to the Relevant Technology that claims priority from or to an application that was filed prior to one year following the final termination of this action (including any appeals).

(2) **Ethical Wall.** To ensure compliance with the purpose of this provision, each party shall create an "Ethical Wall" between those persons with access to "ATTORNEYS' EYES ONLY" material pertaining to design, manufacture, or operation of Relevant Technology and any individuals who prepare, prosecute, supervise or assist in the preparation or prosecution of any patent or patent application, or in the drafting or revising of a patent claim, pertaining to the Relevant Technology.

(3) **Post-Grant Proceedings.** Nothing in this Order shall prevent a person with access to "ATTORNEYS' EYES ONLY" material pertaining to design, manufacture, or operation of Relevant Technology from participating in a post-grant PTO proceeding, including inter partes review (IPR) or post-grant review (PGR), except that such person shall not participate directly in drafting of any claim or amendment to any claim(s).

**(H) NO WAIVER OF PRIVILEGE AND CLAWBACK PROCEDURE**

(1) Nothing in this Order shall require production of documents, information, or other material that a party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. If documents, information, or other material subject to a claim of attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity is inadvertently or unintentionally produced, such production or inspection shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity.

(2) Any party that inadvertently or unintentionally produces documents, information, or other material it reasonably believes are protected under the attorney-client privilege, work product doctrine, or other privilege, doctrine, or immunity may obtain the return or destruction of such documents, information, or other material by promptly notifying the recipient(s) in writing and providing a privilege log for the inadvertently or unintentionally produced documents, information, or other material. The recipient(s) shall gather and return (or destroy) all copies of such documents, information, or other material to the producing party, including copies distributed to others (e.g., outside consultants and vendors), except for any pages containing privileged or otherwise protected markings by the recipient(s), which pages shall instead be destroyed and certified as such to the producing party.

**(I) CONCLUSION OF LITIGATION.** Within thirty (30) days of final termination of this action, including any appeals, all information, documents, or material designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda of the parties), shall at the producing party's election either be returned to the producing party or be destroyed. The receiving party shall verify the return or destruction by affidavit furnished to the producing party, upon the producing party's request. However, counsel of record are entitled to retain three (3) archival copies of all pleadings, motion papers and supporting materials, transcripts, legal memoranda, correspondence, briefs and supporting materials, written discovery requests and responses, exhibits offered or introduced into evidence at trial, or attorney work product. Any such archival copies remain subject to this Order.

**(J) CONTINUING OBLIGATIONS.** The confidentiality obligations imposed by this Order will remain in effect even after the final disposition of this action, until and unless otherwise agreed to by the designating party or ordered by the Court.

**(K) ENFORCEMENT PROCEDURES.**

(1) **Reporting Violations.** Any party knowing or believing that any other party is in violation of or intends to violate

this Order and has raised the question of violation or potential violation with the opposing party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances. Pending disposition of the motion by the Court, the party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

(2) **Notification of Unauthorized Disclosure.** If a receiving party learns of the disclosure or use of information, documents, or material designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY in any circumstance not authorized by this Order, it must promptly notify in writing the designating party of the unauthorized use or disclosure. In the event of unauthorized disclosure, the receiving party must also promptly (a) use its best efforts to retrieve all copies of the designated material, (b) inform the person to whom unauthorized disclosures were made of the terms of this Order.

(3) **Exclusive Jurisdiction.** This Court will have exclusive jurisdiction to enforce this Order, even following the final disposition of this action. Every individual who reviews information, documents, or material designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY agrees to be subject to the jurisdiction of this Court for the purpose of any proceedings related to the enforcement of this Order.

(4) **Remedies for Breach.** Every individual who reviews information, documents, or material designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY acknowledges that a breach of this Order may result in immediate and irreparable injury for which there is no adequate remedy at law. A party may immediately apply to obtain temporary, preliminary, and permanent injunctive relief against a violation or threatened violation of this Order.

**Right to Seek Modification.** Each of the parties shall retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of information, documents, or material designated as CONFIDENTIAL or

ATTORNEYS' EYES ONLY to additional persons or entities if reasonably necessary to prepare and present this action; (b) to apply for additional protection of such material; and (c) to relax or rescind the restrictions of this Order.

**(L) USE OF ARTIFICIAL INTELLIGENCE ("AI")**

A receiving party may use AI tools in connection with discovery materials produced in this action only if the AI tool is operated in a secure environment and is subject to enforceable contractual terms that (a) prohibit the provider from retaining, using, disclosing, selling, or using the materials to train, improve, or develop any AI system; (b) prohibit the materials from being made publicly available or accessible to any other customer or third party; and (c) require commercially reasonable administrative, technical, and physical safeguards to protect the confidentiality of the materials. Discovery materials, whether designated CONFIDENTIAL or ATTORNEYS' EYES ONLY, shall not be entered into any publicly available or consumer-based AI platform. Any use of AI tools must remain consistent with this Order and with the requirement that discovery materials be used solely for purposes of this litigation.

Dated at Milwaukee, Wisconsin, this 20th day of November, 2026.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge